PEOPLE v GREEN

Docket No. 50487. Submitted November 9, 1981, at Detroit.—Decided March 2, 1982.

Kenneth J. Green was convicted, following a bench trial, of manslaughter in the Recorder's Court of Detroit, Robert L. Evans, J. His defense had been self-defense. Defendant appealed. *Held:*

1. The self-defense justification for homicide is based on the circumstances as they appeared to the defendant, and not as they actually existed. Those circumstances as they appeared to the defendant must result in a reasonable belief that he, the defendant, is in danger of death or serious bodily harm. It is unclear from the record whether the court applied the proper standard.

2. A defendant does not have a constitutional right to a statement of reasons for a particular sentence from the sentencing court.

3. Defendant's other allegations are without merit.

Remanded with instructions.

D. F. WALSH, J., concurred in the result but disagreed with the standard for self-defense enunciated by the majority. He would hold that the ultimate question to be answered in a criminal case where the defendant raises the issue of self-defense is whether this defendant truly believed himself to be in danger, not whether a reasonable man under the same or similar circumstances would have believed himself to be in danger.

OPINION OF THE COURT

1. HOMICIDE — SELF-DEFENSE.

The self-defense justification for homicide is based on the circumstances as they appeared to the defendant, and not as they actually existed; those circumstances as they appeared to the

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide § 152.
[2] [No reference].

defendant must result in a reasonable belief that he, the defendant, is in danger of death or serious bodily harm.

2. CRIMINAL LAW — SENTENCING.

A defendant does not have a constitutional right to a statement of reasons for a particular sentence from the sentencing court.

CONCURRENCE BY D. F. WALSH, J.

3. CRIMINAL LAW — SELF-DEFENSE.

The ultimate question to be answered in a criminal case where the defendant raises the issue of self-defense is whether this defendant truly believed himself to be in danger, not whether a reasonable man under the same or similar circumstances would have believed himself to be in danger.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *William L. Cahalan*, Prosecuting Attorney, *Edward Reilly Wilson*, Principal Attorney, Appeals, and *Andrea L. Solak*, Assistant Prosecuting Attorney, for the people.

*Kim Robert Fawcett*, Assistant State Appellate Defender, for defendant on appeal.

Before: R. M. MAHER, P.J., and D. F. WALSH and D. C. RILEY, JJ.

I

R. M. MAHER, P.J. Defendant was charged in a two-count information with second-degree murder, MCL 750.317; MSA 28.549, and possession of a weapon during the commission of a felony, MCL 750.227b; MSA 28.424(2). After a bench trial defendant was convicted of manslaughter, MCL 750.321; MSA 28.553, and acquitted of the felony-firearm charge. He appeals as of right.

The parties stipulated that the alleged victim,

Willie Leonard, had died of a gunshot wound to the abdomen on August 17, 1979. Defendant claimed that he had killed Leonard in self-defense.

Defendant, testifying in his own behalf, gave the following version of the incident: On August 17, 1979, defendant met Leonard, whom he had known for about three years, at about 4 p.m. They both fell asleep in defendant's apartment at approximately 6 or 6:30 p.m. Before falling asleep, defendant saw some money fall out of Leonard's pocket and onto a love seat occupied by Leonard. After defendant had informed him that he had dropped the money, Leonard picked it up, counted it, and put it back in his pocket. Leonard subsequently left the room, returned 4 or 5 minutes later, and said that he wanted his money and that if he didn't get it he was going to "fuck [defendant] up".

At the time, Leonard had his hands under his coat and behind his back. Defendant got his rifle from the closet and came down the hallway toward Leonard. He stopped and asked Leonard to leave. Leonard responded, "Fuck you". Defendant then fired a shot into the baseboard near Leonard; Leonard continued to approach. Leonard then began to remove his hands from behind his jacket, and defendant shot him.

Defendant believed Leonard was carrying a weapon. He had seen Leonard on prior occasions in possession of a stiletto, which he usually kept in his car. On previous occasions defendant had seen Leonard act violently toward other people. Defendant once saw Leonard beat up another person for absconding with $12 that Leonard had entrusted to him.

At the conclusion of the trial, the trial court made the following statement:

"I find as a fact on August 16, 1979, at 1200 Selden, Building 801, Building *[sic]* 452 the complainant, Willie Randolph Leonard, met his death as a result of being shot by the defendant, Kenneth Jessie Green, in the manner described in the autopsy report. I find that the defendant and the complainant were friends, known to each other prior to that day, and that on the occasion of the shooting that the two of them had engaged in an altercation, that that altercation was of short duration and that at some point in such altercation that the defendant claims that he believed that the decedent was going to do him some physical harm. He claimed the reason was that he believed—had to do with his prior knowledge of his proprneisites *[sic]* for violence. He claimed that the fact that the decedent's hands were hidden added to the apprehension, fear and concern, and that his physically handicapped condition of having no fingers, made him apprehensive of significant injury, because he was not in a position to defend himself.

"I find the other elements of self-defense clearly shown and it is the question of the reasonableness of the defendant's belief that has caused the court some concern. The description of the shooting comes into form. That of the physical evidence about which the prosecutor argues, and the defendant's statement. Taking in *[sic]* in its best light, the defendant's statement, I do find there was substantial distance between the parties. I further find that that distance was described by the defendant while on the witness stand as between him and counsel's table, which appears to exceed 15 feet. I find that the defendant never actually saw a weapon, indeed there was none. But he fired over that distance having apprehension that the decedent *[sic]* was advancing on him. I find the defendant's claimed reasonableness is not reasonable, nor honest, as the court perceives it. The court appreciates the person who finds himself under attack is not required to make nice distinctions as to what is reasonable.

"I find the acts of the defendant are precipitated prior to that time, that he should not have done that which he did claiming to defend himself. I'm of the opinion instead the shooting of the deceased was done in anger, but in any event, self-defense has not been established."

## II

### A

As a panel of this Court pointed out in *People v Robinson,* 79 Mich App 145; 261 NW2d 544 (1977), there is considerable controversy over the proper standard to be employed in determining when a person is justified in the use of deadly force.[1] Analysis of the relevant case law reveals that the principal area of disagreement is over the following issue: In order to establish the validity of a claim of self-defense, must a defendant show only that he *actually* believed he was in danger of death or serious bodily harm, or must he also show that he *reasonably* believed that he was in such danger?

### B

In *People v Burkard,* 374 Mich 430, 438; 132 NW2d 106 (1965), the Supreme Court referred to an "honest belief" standard in concluding that the trial court had incorrectly instructed the jury. However, careful examination of the *Burkard* opinion does not indicate that the Court intended to overrule *sub silentio* the long line of cases holding that "reasonable belief" is the proper stan-

---

[1] Cases are collected in *Robinson, supra,* 158, 159, fn 8, 9.

dard.[2] Rather, *Burkard* stands for the proposition that the reasonableness of a defendant's belief that his life is in danger must be judged on the basis of the circumstances as they were perceived by the defendant, and not as they actually existed.[3]

Subsequently, in *People v Lenkevich,* 394 Mich 117, 124; 229 NW2d 298 (1975), and most recently, in *People v Doss,* 406 Mich 90, 102; 276 NW2d 9 (1979), the Supreme Court indicated that "reasonable belief" is the right test. *People v Perez,* 66 Mich App 685, 692; 239 NW2d 432 (1976) sets forth the correct analysis:

"First, the self-defense justification for homicide is based upon the circumstances as they appeared to defendant, and not as they actually existed, *People v Burkard,* 374 Mich 430; 132 NW2d 106 (1965), *People v Sangster,* 33 Mich App 712; 190 NW2d 317 (1971). Second, those circumstances as they appeared to the defendant must result in a reasonable belief that he, the defendant, is in danger of death or serious bodily harm, *People v Lenkevich,* 394 Mich 117, 124; 229 NW2d 298 (1975), *People v Shelton,* 64 Mich App 154;

[2] See *People v Doe,* 1 Mich 451, 457 (1850), *Pond v People,* 8 Mich 150, 173 (1860), *Hurd v People,* 25 Mich 405, 412 (1872), *People v Coughlin,* 67 Mich 466, 473-474; 35 NW 72 (1887), *People v Harris,* 95 Mich 87, 90; 54 NW 648 (1893), *People v Tubbs,* 147 Mich 1, 10; 110 NW 132 (1907), *People v Meert,* 157 Mich 93, 101; 121 NW 318 (1909), *People v Giacalone,* 242 Mich 16, 21; 217 NW 758 (1928).

We observe, however, that another group of ancient cases can be read for the proposition that "honest belief" is the correct standard. See *Patten v People,* 18 Mich 314, 333; 100 Am Dec 173 (1869), *People v Lennon,* 71 Mich 298, 300-301; 38 NW 871; 15 Am St R 259 (1888), *People v Hull,* 86 Mich 449, 459; 49 NW 288 (1891), *People v Piper,* 112 Mich 644, 645; 71 NW 174 (1897).

[3] "It is unlikely that *Burkard* introduced a new determination for self-defense cases—whether a defendant's belief in impending harm was honest or dishonest. The test of "honest belief", we take it, means only that a defendant's conduct should be judged 'from the circumstances as they appeared to him at the time'. *People v Tubbs,* 147 Mich 1, 12; 110 NW 132 (1907)." *People v Shelton,* 64 Mich App 154, 157; 235 NW2d 93 (1975).

235 NW2d 93 (1975), *People v Bright,* 50 Mich App 401, 406; 213 NW2d 279 (1973)."

See also *People v Cooper,* 73 Mich App 660, 663; 252 NW2d 564 (1977).

## C

We are unable to determine from the trial court's ruling whether or not it believed defendant's version of the circumstances confronting him before the shooting incident. Accordingly, we remand this case to the trial court for specific factual findings on the following issues: (1) the circumstances as they appeared to defendant prior to the shooting; and (2) whether defendant actually believed that he was in danger of death or serious bodily harm.

If the trial court indicates on remand that it believed defendant's version of the circumstances as he perceived them (set forth in Part I, *supra),* and if it originally intended to find that defendant actually believed that he was in danger of serious bodily harm, then defendant is entitled to reversal of his conviction and discharge. Under defendant's version of the facts, if the trial court finds it truthful, we hold as a matter of law that defendant reasonably believed that his life was in danger. Given a specific set of factual findings, the reasonability of a defendant's actual belief that he is in danger is a question of law.

On the other hand, if the trial court specifically finds that defendant did not actually believe that he was in danger of serious bodily harm, then his conviction of manslaughter shall be affirmed.

Finally, in the event that the trial court finds that defendant actually believed that he was in danger of serious bodily harm but indicates that it disbelieved certain aspects of defendant's story, then the trial court shall make a *legal* determination of the reasonableness of defendant's belief. This legal determination will be subject to normal review—*i.e.*, not under the "clearly erroneous" standard—by this Court.

## III

Defendant has raised three other issues on appeal which merit relatively little discussion. First of all, defendant contends that the trial court imposed on him the burden of proving that he acted in self-defense in shooting Leonard. We do not believe that the trial court's use of such language as "I found the other elements of self-defense *clearly shown*", and "self-defense has not been established", indicates that it was under the impression that defendant had the burden of proof on the self-defense issue. If the trial court had been under such an impression, reversal would be required. *People v Jackson,* 390 Mich 621; 212 NW2d 918 (1973). Reversal would be necessary in the instant case if the trial court had stated that *defendant* had not "shown" or "established" self-defense.

Secondly, defendant claims that the trial court erred in considering the fact that the victim had two minor children in imposing sentence. Although it is true that the court postponed the original sentencing date in order to obtain information about Leonard's family, the court did not refer to this factor during the sentencing hearing. In the absence of such concrete evidence, we are

unwilling to assume that this information affected the sentence imposed.

Finally, defendant argues that he was denied his right to due process of law, equal protection of the laws and effective assistance of counsel due to the trial court's failure to state on the record its reasons for the particular sentence it imposed on defendant. We agree that such a requirement would facilitate appellate review of sentencing decisions. However, we cannot conclude that a defendant has a *constitutional right* to a statement of reasons for the particular sentence imposed. We observe that in *People v Lee,* 391 Mich 618, 638; 218 NW2d 655 (1974), the Supreme Court stated that it is "useful"—not "necessary"—"for the sentencing judge to indicate on the record the extent to which he relied on specific information contained in the presentence report in levying sentence".

Remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

D. C. RILEY, J., concurred.

D. F. WALSH, J. *(concurring).* I concur in the result reached by the majority. I write separately to express by disagreement with the majority's conclusion that the "reasonable belief" standard is the proper one for determining the validity of a claim of self-defense. In my judgment, the correct test is whether the accused "actually" or "honestly" believes himself to be in danger of death or great bodily harm. *People v Robinson,* 79 Mich App 145, 158; 261 NW2d 544 (1977).

It would be inconsistent for the trier of fact to find on the one hand that the defendant actually and honestly believed that he was in danger of

death or great bodily harm when he acted to
defend himself but, on the other hand, that he
nevertheless had the requisite criminal intent to
commit the crime. It seems to me, therefore, that
if a trier of fact is convinced that an accused acted
to defend himself because he honestly and actually
believed that he was in danger of death or great
bodily harm, it must find that he acted in justifi-
able self-defense even if it is not also persuaded
that the belief was reasonable. As this Court said
in *Robinson, supra,* the reasonableness of the be-
lief may properly be considered by the jury but
only as a factor in determining whether the ac-
cused's alleged belief that he was in danger was
actual and honest.

The majority cites *People v Doss,* 406 Mich 90;
276 NW2d 9 (1979), as authority for its conclusion
that an accused's belief that he was in danger
must be "reasonable". However, the issue as to
whether the "reasonable belief" test or the "actual
belief" test is the correct one for determining a
claim of self-defense was not presented to the
court for decision in that case. The discussion
relied upon by the majority, therefore, is nondeci-
sional and does not constitute binding precedent.